**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NATASHA WHITE,** | **Civil Action No. 18-2453 (MCA)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al.,** | |
| **Respondents.** | |

This matter has been opened to the Court by Petitioner Natasha White's ("Petitioner" or "defendant") filing of a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having reviewed the Petition, Respondent's Answer, Petitioner's Traverse, and the relevant record, the Court denies the Petition for the reasons stated in this Opinion and also denies a certificate of appealability ("COA").

I.   **FACTUAL BACKGROUND**[1]

a.  **Petitioner's Trial**

Following a fifteen-day jury trial, Petitioner was convicted of the disorderly persons offense of criminal mischief, N.J.S.A. 2C:17–3a, amended down from the third degree; two counts of third-degree possession of a weapon to use unlawfully against a person or property, N.J.S.A. 2C:39–4d; first-degree murder, N.J.S.A. 2C:11–3a(1), (2); first-degree vehicular homicide by recklessly operating a motor vehicle in violation of N.J.S.A. 39:4–50 within 1,000

---

[1] The factual background is taken from the state court record, including the New Jersey Appellate Division opinions denying Petitioner's direct appeal and PCR.

feet of a school, N.J.S.A. 2C:11–5a, b(3)(a); second-degree vehicular homicide by driving recklessly, N.J.S.A. 2C:11–5a; and third-degree vehicular homicide while operating a vehicle in violation of N.J.S.A. 39:3–40, N.J.S.A. 2C:40–22a; as well as simple assault, N.J.S.A. 2C:12–1a, as a lesser-included offense of second-degree aggravated assault, N.J.S.A. 2C:12–1b(1). The trial judge sentenced petitioner to an aggregate sentence of forty-four-and-one-half years in prison with a period of parole eligibility of thirty-four years.

These convictions arose out of two related incidents and the motor vehicle death of Zachary Sanders, which the jury found was caused by Petitioner's intentional conduct. The victim Sanders lived in West Orange with his fiancée Latoisha Richardson and their two children. For approximately two years prior to his death, Sanders carried on an affair with Petitioner.

### 1. The March 31 Incident

On March 31, 2007, Sanders was at the Rubicon Bar with a childhood friend, Desmond Jones, and Petitioner. While there, Sanders and Petitioner began to argue; the argument escalated into a shouting match, although Jones claimed that Sanders seemed nonchalant about the argument. According to Jones, at this point Richardson arrived, said hello to several people and went outside with Sanders. Petitioner followed the couple outside, and Jones soon followed as well.

The bar owner, Willie Johnson, stated that Jones, Sanders, and Petitioner were at the bar, and that Richardson was not present. Sanders and Petitioner were arguing, and Johnson told the two to stop arguing. Instead, the two went outside, and approximately ten minutes later, Johnson heard vehicles crashing together.

According to Richardson, when she arrived at the bar at approximately 2:00 a.m., she drove by and noticed Sanders arguing with a woman, whom she later recognized as Petitioner. Although Richardson was aware of Sanders' and Petitioner's affair, she was unaware that it was ongoing. While Richardson and Sanders spoke in the parking lot, Petitioner got into her vehicle and used it to ram Sanders' vehicle "a good four times." Sanders was pushed into a pole in front of the vehicle. Next, Petitioner left the parking lot, but quickly returned and attempted to hit Sanders with her vehicle. The police were called, and Petitioner drove off.

Two officers from the Orange Police Department responded to the bar and interviewed Sanders, as well as other witnesses. Both officers noticed that Sanders' face was scratched as a result of his fight with Petitioner, but he refused medical attention. Approximately fifteen minutes after the police arrived, Petitioner returned to the bar. She had been on the phone with police headquarters and was persuaded to return to the scene. She revved her engine as she approached the bar, and stopped quickly enough for her vehicle to fishtail on the road. She exited the vehicle, leaving it in the middle of the road, and yelled while approaching the officers. She claimed that Sanders had hit her, although the officers did not see any marks on her. She was arrested for simple assault, criminal mischief, and possession of a weapon (her automobile) for an unlawful purpose.

### 2.  The April 9 Incident

On April 9, 2007, Sanders and Jones were again at the Rubicon Bar. Despite the March 31 incident, Petitioner was there as well, working as a bartender. Jones overheard Petitioner tell

Sanders that she felt good about having tried to hit him with her vehicle. Jones then left the bar to get something to eat. He returned after Sanders was killed.

When Johnson, the owner, arrived at the bar earlier that evening, he noticed that Petitioner and Sanders were arguing again. He fired Petitioner and told her to leave the bar. He also suggested that Sanders stay in the bar and not follow Petitioner. Johnson was later told by Bernard Kelly, one of Sanders' friends, that Petitioner had run Sanders over with her vehicle.

Kelly was also at the Rubicon Bar on April 9, 2007. He came to the bar at Sanders' invitation, left for a short period of time, and then returned. He noticed that Petitioner and Sanders were arguing and surmised from what they were saying that Sanders was ending their affair. Kelly overheard Petitioner threaten Sanders by stating that she had people looking for him. Kelly interjected at this point and told Petitioner that such a statement was not necessary. In response, Petitioner told Kelly to mind his business or he would "get some, too." He claims that Petitioner then went to the kitchen, and at that point he told Sanders that it was time to leave. Kelly and Sanders left through the front door, and Petitioner left through a side door into the parking lot.

Kelly then went to his vehicle, which was parked next to Petitioner's vehicle, and spoke with her, telling her to calm down before driving anywhere. He noticed that Petitioner seemed calm. Sanders then walked towards the pair and shouted an obscenity towards her, at which point Kelly stated, "all hell broke loose." Petitioner got in her vehicle and backed out of the bar's parking lot. Sanders and Kelly were standing on the sidewalk next to Lincoln Avenue when Petitioner used her vehicle to ram Sanders' vehicle. Petitioner's vehicle became stuck on the curb, and she spun her tires in the course of freeing it. Kelly told Sanders that they should go back inside the bar. Sanders was intoxicated.

Next, Petitioner drove to the back of the parking lot again and sat, revving her engine. At this point Sanders and Kelly started to head back towards the bar, and Petitioner drove towards them. She steered towards Sanders, and Kelly ran, jumped in the air, and heard a loud noise as Petitioner hit both Sanders and Kelly. Kelly was hit on the leg and flung into the air; he landed on the ground near the passenger side of Petitioner's vehicle. Sanders was struck and landed on the middle of the hood. He proceeded to bang on the windshield and yell for Petitioner to stop the vehicle.

With both hands on the steering wheel, Petitioner looked at Sanders, "stomped" on the gas, and drove over the sidewalk onto Lincoln Avenue. Sanders continued to yell for her to stop. His hands then flew off the vehicle and up in the air, and he fell under the vehicle while Petitioner continued driving to the next intersection. The vehicle was traveling too fast for Kelly to catch up to it. Kelly ran behind the vehicle, yelling for Petitioner to stop; when he reached the vehicle he turned it off and pulled Petitioner from the vehicle. They struggled, and Kelly hit Petitioner twice before he was stopped by the police. The responding officers on April 9, were the same as those responding on March 31.

Petitioner was cited for driving on a suspended license and for driving while intoxicated. The officer placed Petitioner, whom he recognized from the March 31 incident, in the patrol vehicle. Under Petitioner's vehicle, Sanders was twitching and severely injured. The police were unable to lift the vehicle off Sanders until the fire department arrived. After the vehicle was lifted off of Sanders, he was declared dead by emergency medical services.

At trial, various experts opined as to the operability of Petitioner's vehicle, finding that Petitioner's vehicle, a Lexus, had front-end collision damage, while Sanders' vehicle, a blue

Dodge Durango, had collision damage on the rear end passenger side. The Lexus was generally well-maintained and had properly functioning brakes.

Robert Havier, of the New Jersey State Toxicology Laboratory, was qualified as an expert in toxicology and concluded that Sanders had a blood-alcohol content of 0.271% while defendant's blood-alcohol content as 0.123%, which was over the statutory limit of 0.08%.[2]

The Assistant Medical Examiner in Essex County at the time of the incident, Dr. Alex Zhang, performed an autopsy on Sanders' body and concluded that the physical evidence was consistent with Sanders being dragged on his back by a vehicle. Among other things, there were tire marks on Sanders' upper left arm and several broken ribs. The medical examiner concluded that Sanders had been run over and that the heavy weight of the vehicle compressed his chest. The cause of death therefore was mechanical asphyxia, and the manner of death was a "homicide."[3] The court cautioned the jury to keep in mind that it was the final arbiter of guilt or innocence.

An Essex County Prosecutor's Office detective, Arnold Anderson, who specializes in investigating serious automobile accidents, responded to the scene. When he arrived, he observed the Lexus, which was approximately 140 feet from the Durango. Sanders' body was lying in the street, and his work-identification badge was found approximately forty-five feet away. The detective did not notice any skid marks, or other evidence of heavy braking that would indicate, if present, that Petitioner had tried to avoid hitting something. However, he noted that at a low rate of speed, there may not have been skid marks because of the vehicle's anti-lock

---

[2] *See* N.J.S.A. 39:4–50.

[3] Dr. Zhang's testimony is discussed in more detail later in the opinion.

brakes. Because of the odd position of Sanders' body, it appeared that Sanders had been run over while on the ground and then dragged under the vehicle.

On cross-examination, Anderson responded to defense counsel's inquiries and concluded that this incident was a homicide based upon the prior domestic violence incident between Petitioner and Sanders, which involved Petitioner attempting to run Sanders over in her vehicle; the fact that this was not a random act, but was targeted at Sanders; and the lack of attempts to avoid Sanders, despite the lack of traffic in the road, and the ability to do so. Had Sanders been holding on to the hood of Petitioner's Lexus and the brakes been applied, Sanders would have been propelled off the hood and onto the street in front of the vehicle. For Sanders to end up under the vehicle, Petitioner would have had to accelerate and drive over Sanders' body after it fell to the street.[4]

Petitioner claimed that she was negligent, wherein Sanders was intoxicated, jumped onto Petitioner's hood, and eventually fell off, causing him to be run over. The defense countered the State's case with Salvatore Fariello, an expert in pedestrian accident reconstruction, as its sole witness. Fariello agreed with the number, type and general cause of Sanders injuries but opined that Sanders was crushed when Petitioner applied the brakes in her vehicle which caused "front end dive." The body was then dragged only a short distance while the vehicle came to a stop. He pointed out that the anti-lock braking system on Petitioner's Lexus prevented it from leaving skid marks. Fariello suggested that Sanders rode on the hood for approximately one hundred feet while traveling less than twenty miles per hour. After he fell off the front of the vehicle, Petitioner was unable to avoid him, and that the death was the result of an unavoidable accident.

---

[4] This aspect of Detective Anderson's testimony is discussed in more detail later in the Opinion.

Petitioner was convicted of first-degree murder, N.J.S.A. 2C:11-3(a), and other charges related to and leading up to her intentionally and fatally striking her victim with her automobile. The sentencing court imposed an aggregate sentence of forty-five years on March 24, 2009.

### b. Petitioner's state court appeal and postconviction proceedings

Petitioner appealed her conviction and sentence, and her direct appeal was denied on July 10, 2012. *See State v. White*, 2012 WL 2735591, at *1–4 (N.J. Super. App. Div. Jul.10, 2012). The Supreme Court denied her petition for certification on January 16, 2013.  *State v. White*, 213 N.J. 568 (2013).

Petitioner filed her PCR petition on March 6, 2013. The PCR court denied the petition on both procedural and substantive grounds by order dated January 27, 2014.  The PCR court also placed its reasons on the record for denying the petition. *See* Exhibits 29, 30. Petitioner appealed, and the Appellate Division affirmed the denial of Petitioner's PCR. *State v. White*, 2016 WL 4784101, at *1 (N.J. Super App. Div. 2016). The New Jersey Supreme Court denied certification on December 5, 2016. *See State v. White*, 228 N.J. 428 (2016).

### c. Petitioner's Habeas Proceedings

The parties appear to agree that, for reasons unknown, a copy of the New Jersey Supreme Court's Order denying certification was not posted on the New Jersey Supreme Court's electronic filing system until January 8, 2018. *See* Respondent's Motion to Dismiss at 6; Exhibit 9. It also appears that the Office of the Public Defender did not receive notice of the Order until January 2018. *See* ECF No. 1, at 20-21, Feb. 6, 2018 Letter of W. Welaj, Esq. at 1. Petitioner submitted her habeas Petition for filing on February 14, 2018, approximately a month after she received the copy of the Order. *See* ECF No. 1, Pet. at 17.

Respondents filed a motion to dismiss the Petition on the basis of timeliness. ECF No. 5. The Court reserved on timeliness and denied the motion to dismiss without prejudice on December 20, 2018.[5] ECF No. 7. Respondents filed a full answer on March 13, 2019, and Petitioner submitted her traverse on September 3, 3019. See ECF Nos. 13, 14, 16. The matter is fully briefed and ready for disposition.

## II.   STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

[5] Although Petitioner reached out to her public defender to find out the status of her petition for certification, Respondents argue that Petitioner was not sufficiently diligent because she failed to contact the New Jersey Supreme Court directly. In their full answer, Respondents provide a letter dated March 7, 2019, from Heather Joy Baker, New Jersey Supreme Court Clerk, stating that the Order denying Petitioner's petition for certification was not uploaded to the e-filing system until January 8, 2018, but was on file with the New Jersey Supreme Court since December 5, 2016. *See* Exhibit 31. It appears undisputed that the usual method of notifying parties that a petition for certification has been denied is through the e-filing system and Petitioner did not receive this notice until January 8, 2018. Although Petitioner could have reached out directly to the New Jersey Supreme Court in the interim, she had no reason to believe that her petition had been decided based on her attorney's representation. For these reasons, the Court finds that Petitioner may be entitled to equitable tolling and addresses the merits of her petition.

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[6] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," at of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e]

---

[6] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

[Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule

is "independent of the federal question [presented] and adequate to support the judgment."
*Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also*
*Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)).
If a federal court determines that a claim has been defaulted, it may excuse the default only upon
a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at
366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally
defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See*
*Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of
[petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404
F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder
28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly
exhausted, and we take that approach here").

## III.    <u>ANALYSIS</u>

### a.  **Ground One (Expert Testimony)**

In Ground One, Petitioner argues that portions of Dr. Zhang and Detective Anderson's
testimony denied her a fair trial.

#### 1.  **Dr. Zhang's Testimony**

The medical examiner Dr. Zhang testified at length about Sander's injuries, which
supported the State's theory of the case.  *See* Exhibit 19, p. 20-64.  Dr. Zhang also testified that
Sanders passed within minutes, and that he considered Sanders's death a homicide.

Q: Why did you come to that conclusion?

A: It's based on the investigation history. Autopsy findings. I consider is [sic] not accidentally like the car crash on somebody else. Somebody deliberately use the vehicle as a weapon to kill another human being.

Q: ... Do you have an opinion based upon reasonable degree of medical certainty as to cause and manner of death in this case?

A: Yes.

Q: What would that be, the cause and manner of death?

A: It's like 99.9 percentage if you use percentage- wise over the certainty.

Q: That it was homicide?

A: Yes.

Exhibit 19, p.27-29.  Dr. Zhang did not testify that <u>Petitioner</u> committed a homicide, but, rather, that the manner of death was a homicide.

Nevertheless, the trial court gave a tailored defense-requested curative instruction to the jury that the jury alone must determine whether the State proved defendant's guilt of the charges beyond a reasonable doubt, despite the expert's testimony, that he "felt" "99.9 percent sure it was a homicide." Exhibit 19, p.86- 87.

The court instructed the jury:

> Ladies and gentlemen, I had previously given you the charge on an expert's testimony, and I told you how it is that you may use expert testimony, and I will, again, be giving you that on occasion.
>
> At the end of the case I will further give you a charge that, again, discusses the weight to be accorded and assessment of expert opinion testimony. You may have recalled that a witness testified in this case, and said something that might be inferred by you as to an expression of a witness['] opinion as to the ultimate guilt or innocence of the defendant. I believe there was a quote that said that the expert felt that it was and 99.9 percent sure that it was a homicide [sic]. You are reminded, and I want to emphasize to

> you that the ultimate guilt or innocence is to be made only by you
> as a jury in this case. The ultimate determination of whether or not
> the State has proven the defendant's guilt beyond a reasonable
> doubt is to be made only by you the jury in considering all of the
> evidence in the case.

*See id.*

### 2. Detective Anderson's Testimony

Initially, petitioner objected to the State presenting Detective Anderson as an expert in accident reconstruction because he did not provide a report. Exhibit 17, p.172-179. The trial court conducted an evidentiary hearing. The defense withdrew its objection to the detective testifying, and the trial court held that the detective could not testify as to anything beyond the four-corners of his report. Exhibit 18, p.107-110.

Integral to Petitioner's defense was that the victim Sanders had jumped on the hood of her car. On cross-examination, Petitioner's counsel asked Detective Anderson for his opinion about how Sanders ended up on the hood of petitioner's car. Detective Anderson answered, "I could offer an opinion. Counsel responded, "I'll accept your opinion even though it's not in your report. I will open it for you." Exhibit 18, p.196; 198.

Defense counsel asked the detective why he believed the incident was a homicide rather than an accident and to set forth the factors that led him to that conclusion. Exhibit 19, p.88. This included testimony about the March 31 incident, the relationship between petitioner and the victim, and the fact that the collision occurred while the victim was in a prone position at the point of impact. Exhibit 19, p.89-105. This information was not in Detective Anderson's report. In response to counsel's question, Detective Anderson testified that he did not believe Petitioner's theory, and, after counsel posited an extended hypothetical designed to support the defense theory, stated he did not agree with counsel's conclusion in the hypothetical. Exhibit 19, p.125-136.

At the charge conference, the trial court, without objection from petitioner, qualified Detective Anderson as an expert, Exhibit 22, p.133-136, and the jury received instructions on expert testimony and was instructed that the "ultimate determination" of whether the state had proven its case beyond a reasonable doubt was to be made by the jury alone. Exhibit 25, p.34-36.

On direct appeal, Petitioner asserted that that Dr. Zhang's opinion that Sanders died as a result of a homicide was inadmissible as an opinion expressing the ultimate issue in the case, and also argued that instead of a curative instruction, the only proper remedy was to "strike Zhang's opinion entirely and to tell the jury to disregard his opinion in deciding the case."  The Appellate Division rejected petitioner's argument as follows:

> Defendant did not object to the testimony, and when the court raised the potential problem, rather than asking for Dr. Zhang's testimony to be disregarded as defense counsel does here, defendant's trial counsel requested a curative instruction, and approved of the court's proposed curative instruction. We conclude that absent the objection and in light of trial counsel's concurrence in the proffering of the curative instruction, "in the context of the trial the error was actually of no moment." *State v. Macon*, 57 N.J. 325, 333 (1971). We find no error here.

*State v. White*, 2012 WL 2735591, at *7.

The Appellate Division also rejected Petitioner's argument that Detective Anderson's testimony denied her a fair trial:

> Here, Anderson was qualified and treated as an expert, which defendant does not dispute. The jury received an instruction related to expert witnesses, including Anderson, and was told that it alone was responsible for determining defendant's guilt or innocence. If there was any error in Anderson's testimony, it was brought about through defense counsel's strategic questioning, and was therefore invited. We reject defendant's argument as to Anderson's testimony.

*Id.* at *8.

Having reviewed the relevant testimony, this Court finds that the Appellate Division did not unreasonably apply any clearly established Supreme Court precedent with respect to the

admission of the challenged expert testimony. From the outset, there is no clearly established
Supreme Court precedent regarding whether expert testimony on the "ultimate issue" violates
Due Process. Moreover, "the Due Process Clause does not permit the federal courts to engage in
a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S.
422, 438, n.6 (1983). The admissibility of evidence is generally a question of state law which is
not cognizable on habeas review.  *Keller v. Larkins*, 251 F.3d 408, 412, n.2 (3rd Cir. 2001).
Evidentiary errors "are not considered to be of constitutional proportion, cognizable in federal
habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his
criminal trial." *Bisaccia v. Attorney General of New Jersey*, 623 F.2d 307, 312 (3rd Cir. 1980),
cert. den., 499 U.S. 1042 (1980); *Lesko v. Owens*, 881 F.2d 44. 51-2 (3rd Cir. 1989), cert. den.,
493 U.S. 1036 (1990). In addition, habeas petitioners are not entitled to relief based on trial error
unless they can establish that it resulted in actual prejudice. *O'Neal v. McAninch*, 513 U.S. 432,
445 (1995). An error is harmless unless it "had substantial and injurious effect or influence in
determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). An accused is
entitled to habeas relief only if the habeas court "is in grave doubt as to the harmlessness of an
error that affects substantial rights." *O'Neal*, 513 U.S. at 445.

   The Appellate Division determined that the challenged testimony from Dr. Zhang was
harmless in light of the curative instruction issued by the trial judge. With respect to the
challenged testimony from Detective Anderson, the Appellate Division found no error because
this witness was qualified as an expert and the jury was instructed that it alone determined issues
of guilt or innocence. It further determined that any error in the admission of Anderson's
testimony was invited by defense counsel's strategic questioning. These determinations do
violate any clearly established federal law, and any error in the admission of the testimony

appears harmless in light of the overwhelming evidence, which included eye-witness testimony that petitioner deliberately aimed her car at and sought to seriously injure the victim. For these reasons, the Court will deny relief on Ground One.

### b. Ground Two (Failure to Provide Specific Causation Instruction)

Petitioner claims that she is entitled to habeas relief because the trial court was required to, but did not, instruct the jury on causation because the defense theory was that the victim's death was accidental. At the time of trial, however, all parties agreed that causation was not an issue, and the trial court should <u>not</u> give a specific causation instruction to the jury. Exhibit 25, p.5. And, while a specific causation charge was not provided, the trial court emphasized in each of the homicide charges that the jury must find that petitioner's conduct caused the victim's death before the jury could find petitioner guilty of any of the homicide charges. Exhibit 25, p.49-50; 57; 60-61.

The Appellate Division rejected Petitioner's claim regarding the lack of a specific causation instruction as follows:

> We likewise reject defendant's claim that the judge erred by failing to charge the element of causation.
>
> At trial, both parties not only agreed that causation was not an issue, but also, during a conference with the judge, agreed that a causation charge was not necessary.
>
> Defendant now argues that the court committed plain error by failing to give the jury the additional causation charge that her trial counsel expressly agreed should not be given. She relies upon two cases, *State v. Martin*, 119 N.J. 2 (1990), and *State v.. Eldridge*, 388 N.J. Super. 485 (App. Div. 2006), certif. denied, 189 N.J. 650 (2007), to support her contention that the causation charge was necessary, and that the failure to do so was plain error.
>
> We find no error here, especially given the nature of the proofs and testimony of the eyewitnesses. Eyewitness testimony from both incidents demonstrated that defendant aimed her vehicle at Sanders and attempted to hit him, and that, on April 9, after she had hit him, she continued to drive while he clung to the hood of the

vehicle yelling for her to stop, and that once he was under the
vehicle, she continued to drive, dragging him for some distance.
Further, testimony presented at trial indicated that defendant told
Sanders on April 9 that she had no remorse about trying to hit him
with her vehicle on March 31, which tended to negate her
attorney's "unavoidable accident" theory of the case.

Defendant's trial counsel made a strategic decision to reject the
causation charge because including it would bring more focus on
the similarities between the March 31 and April 9 incidents and,
therefore, undercut her contention that Sanders died from an
unavoidable accident, not an intentional act. The causation charge
was not the only strategic refusal of a charge that defendant's trial
attorney made. Defendant declined instruction on the intoxication
defense because it did not comport with her theory of "unavoidable
accident" and that the defendant was not, in fact, intoxicated.

Although defendant's factual theory was not summarized in the
charge, it was presented to the jury through questioning and
summation. More importantly, the reason that it was not presented
to the jury is that defendant's trial attorney expressly, and for a
strategic purpose, agreed that causation was not at issue, thereby
negating the need to summarize the respective factual theories,
which are only required to be summarized if "the defendant and
State offer contrasting factual theories of causation." Model Jury
Charge (Criminal), "2C:11–3a(l) and 3a(2) Murder" (2004). The
State did present eyewitnesses to testify that in both incidents
defendant aimed her vehicle at Sanders and did not stop when she
struck him. The overwhelming evidence of a lack of mistake
supports the trial judge's decision not to issue the additional
causation charge. That decision was not "clearly capable of
producing an unjust result." R. 2:10–2.

*State v. White*, 2012 WL 2735591, at \*11–12.

The Appellate Division did not unreasonably apply clearly established federal law when

it denied Plaintiff's claim regarding the lack of a causation charge. Federal court review of state

court jury instructions is narrow, and is limited to those instances where the instructions violated

a defendant's due process rights. *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing

*Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is

whether the ailing instruction by itself so infected the entire trial that the resulting conviction

violates due process")); *see also Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (same). The

Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997); *see also In re Winship*, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused). Thus, questions relating to jury charges are normally matters of state law and are not cognizable on habeas review. *Engle v. Isaac*, 456 U.S. 107, 119-20 (1982). Habeas courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law..." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997). Moreover, an error in jury instructions is a trial error, not structural error, that is subject to harmless error analysis. *California v. Roy*, 519 U.S. 2, 5 (1996); *Yohn v. Love*, 76 F.3d 508, 522 (3rd Cir. 1996).

Here, there is no clearly established federal law requiring an instruction on causation where the parties agreed that causation was not at issue and that the trial court should not give the instruction. And any error in failing to provide the specific causation charge was harmless in light of the overwhelming evidence suggesting that the victim's death was not accidental and the trial court's instructions that Petitioner could not be found guilty of homicide unless the jury determined that she caused the victim's death. *See Brecht*, 507 U.S. at 623 (error is harmless where there is no "substantial and injurious effect or influence in determining the jury's verdict"). As such, the Court denies relief on Ground Two.

> **c. Ground Three (Failure to Sever Charges Arising from the March 31 Incident)**

Petitioner next asserts that she was prejudiced by the trial court's failure to sever charges arising from the March 31 incident, where petitioner tried to hit the victim with her car, and the April 9 incident, where petitioner actually struck the victim with her car, resulting in his death. The Appellate Division addressed the severance issue at length and rejected Petitioner's claim as follows:

> We also find no merit in defendant's claim regarding severance. Defendant argues that the judge erred by denying defendant's motion to sever the March 31 and April 9 incidents, and bifurcate them. Further, she argues that the judge failed to address the "high probability of prejudice from such joinder under the unique facts of this case."
>
> Defendant moved to sever the March 31 incident from the April 9 incident on the ground that they were dissimilar because the first involved only property damage, while the second involved injuries to a person. The court held a Rule 104 hearing and heard testimony of Richardson, Jones, and Officer Taylor regarding the March 31 incident. Afterwards, the court held that the incidents were properly joined, and that the March 31 incident would be properly admissible as other-crimes evidence in a trial for the April 9 incident.
>
> Whether a severance should be granted is within the trial judge's discretion, and we will defer to that decision, absent an abuse of discretion. *State v. Chenique–Puey*, 145 N.J. 334, 341 (1996). Generally, two offenses "of the same or similar character" or "based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan" may be joined together in the same indictment. R . 3:7–6. However, if it "appears that a defendant ... is prejudiced by a permissible or mandatory joinder of offenses ... in an indictment or accusation the court may order an election or separate trials of counts ... or direct other appropriate relief ." R. 3:15–2(b).
>
> "Central to deciding whether joinder is prejudicial is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b) ] in the trial of the remaining charges.'" *State v. Oliver*, 133 N.J. 141, 150–51 (1993) (quoting *State v. Pitts*, 116 N.J. 580, 601–02 (1989)) [additional citations omitted]
>
> Generally, to be admissible, evidence must be relevant, that is, it must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

Relevant evidence may be excluded if its probative value is "substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.

Under N.J.R.E. 404(b), evidence of other crimes, wrongs or acts is inadmissible to prove a "defendant's criminal disposition as a basis for establishing guilt of the crime charged." *State v.. Covell*, 157 N.J. 554, 563 (1999) (citing *State v. Stevens*, 115 N.J. 289, 293 (1989)). However, evidence generally inadmissible under N.J.R.E. 404(b) is expressly admissible to prove other facts in issue, such as "'motive, intent, plan, knowledge, identity, or absence of mistake or accident .'" *Covell*, *supra*, 157 N.J. at 570 (quoting *Stevens*, *supra*, 115 N.J. at 293). This list, however, is not exhaustive; other-crimes evidence "may be admitted when relevant to some fact in issue not specifically referred to in N.J.R.E. 404(b)." *Biunno*, Weissbard, & Zegas, Current N.J. Rules of Evidence, comment 15 on N.J.R.E. 404 (2011).

To be admissible, evidence otherwise excluded by N.J.R.E. 404(b) must satisfy the four-part test set forth in *State v. Cofield*, 127 N.J. 328, 338 (1992). *Covell*, supra, 157 N .J. at 564. Accordingly, to be admissible, evidence of other crimes or acts (1) must be relevant to a material issue; (2) must be similar in kind and reasonably close in time to the offense charged; (3) must be clear and convincing; and (4) must have probative value that is outweighed by its apparent prejudice. *Cofield*, supra, 127 N.J. at 338. The fourth prong of this test incorporates the traditional probative value-prejudicial impact analysis required by N.J.R.E. 403. *State v. Long*, 173 N.J. 138, 162 (2002). It is important to note, however, that this prong is "more exacting than [N.J.R.E.] 403, which provides that relevant evidence is admissible unless its probative value is substantially outweighed by the risk of undue prejudice." *State v. Rose*, 206 N.J. 141, 161 (2011). Also, "the four Cofield prongs are not equally applied in all cases, and the courts require varying degrees of compliance with each prong depending on the facts of the case as well as the nature of the other conduct evidence and its relationship to the current case." Biunno, Weissbard, & Zegas, *supra*, comment 8 on N.J.R.E. 404.

The admissibility of other-crimes evidence is within the discretion of the trial court. *Covell*, supra, 157 N.J. at 564. The Supreme Court has held that " '[t]he trial court, because of its intimate knowledge of the case, is in the best position to engage in this balancing process. Its decisions are entitled to deference and are to be reviewed under an abuse of discretion standard.'" *Ibid.* (quoting *State v. Ramseur*, 106 N.J. 123, 266 (1987)).

Regarding the issue of whether the two incidents were properly joined, the judge found that factually, they were nearly identical, and therefore, of the same or similar character and were properly joined. There was no abuse of discretion here. As the judge noted, both cases involved disputes between Sanders and defendant, both occurred in the same location, and in both, an angry defendant got in her vehicle and rammed into Sanders' vehicle. The only difference is that in the April 9 incident defendant was successful in her attempt to strike Sanders with her vehicle, whereas on March 31 she missed.

As to whether evidence of the March 31 incident would unduly prejudice defendant in her trial for the April 9 incident, the judge found that it would not. He set forth the *Cofield* factors and applied the facts in this case to those factors. Under the first factor, relevance, the judge found that the March 31 incident was relevant because defendant's theory was premised on Sanders' death being unintentional and the result of an accident. The fact that defendant tried to hit Sanders with her vehicle a mere nine days earlier under similar circumstances tends to prove her intent to strike him with her vehicle and is, therefore, relevant.

Under the second factor, similarity in kind and timeframe, the court found that the two incidents were practically identical in nature, and that they occurred only nine days apart. Under the third factor, reliability, the facts of the March 31 incident were testified to by multiple witnesses in the Rule 104 hearing. The court found that Jones and Richardson clearly and convincingly established their presence at the incident and that they would testify at trial consistently with their hearing testimony.

Finally, under the fourth factor, undue prejudice, the court found that defendant would suffer no prejudice if these incidents were joined, because, if they were tried separately, the March 31 incident would be admissible under N.J.R.E. 404(b). While this evidence is certainly prejudicial to defendant's case, so is all evidence tending to prove that defendant is guilty. Here, it does not outweigh the probative value of the March 31 incident, which the State aptly describes as "the most direct rebuttal to defendant's theory that the incident was an unavoidable accident." There was neither an abuse of discretion nor error here.

Finally, we reject without any further comment the suggestion that the March 31 evidence should have been sanitized or that the curative instruction was not given in a timely manner. As to the March 31 evidence, it was directly related to what transpired on April 9; moreover, the instruction was delayed at the request of defendant and cannot now be advanced as a claim of error.

*State v. White*, 2012 WL 2735591, at *9–11.

The Appellate Division's denial of Petitioner's severance claim does not involve an unreasonable application of clearly established federal law. The Supreme Court of the United States has observed that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). "Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *United States v. Reicherter*, 647 F.2d 397, 400 (3rd Cir. 1981). As the Supreme Court explained in *Zafiro v. United States*, 506 U.S. 532 (1993), "an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence [but] a fair trial does not include the right to exclude relevant and competent evidence." *Id.* at 540 (citation and internal quotation marks omitted). Furthermore, misjoinder is subject to a harmless error analysis. *See Lane*, 474 U.S. at 450 (in light of the overwhelming evidence of guilt, misjoinder was harmless where limiting instruction was provided and the evidence would have been admissible to show defendant's intent); *see also Torres v. Ricci*, 2010 WL 99268, at *9 (D.N.J. Jan. 6, 2010)(explaining same and finding that petitioner was not denied due process when the trial court denied his motion to sever the three counts against him since the incidents would have been admissible as other crimes evidence).

Here, the Appellate Division analyzed the severance issue at length and affirmed the trial court's determination that Petitioner would not be prejudiced by the joinder of the two incidents, finding that the March 31 incident was highly relevant evidence and would have been admissible

under N.J.R.E. 404(b) in the trial of the April 9 incident.[7] Moreover, the trial court, in its final instruction, told the jury that evidence of the March 31 incident was not admitted to prove petitioner's criminal propensity, and is only to be considered, vis-à-vis the April 9 incident, on the issues of petitioner's intent and the absence of mistake or accident. *See* Exhibit 25, p.37-39. Because the Appellate Division's rejection of Petitioner's severance claim is neither contrary to nor an unreasonable application of controlling Supreme Court precedent, the Court denies relief on Ground Three.

### d.  Ground Four (Ineffective Assistance of Counsel Claims)

In the instant habeas petition, Petitioner argues that trial counsel provided ineffective assistance because he: 1) Refused to incorporate an intoxication defense into the overall defense and did not request an intoxication instruction; 2) Failed to object to Dr. Zhang's ultimate issue testimony; and 3) Opened the door to Detective Anderson's damaging testimony that the victim may have been on the hood of petitioner's car for some time and discussion of factors that led him to determine that the victim's death was not an accident.

To succeed on an ineffective assistance of counsel claim, petitioner must establish that: (1) counsel's performance was deficient; and (2) this inadequate representation "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Williams v. Taylor*, 529 U.S. 362, 390-1 (2000). To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111,

---

[7] This ruling appears to be based solely on state law and state rules of procedure and evidence. Generally, matters of state procedural law are not reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. This is generally true even where the state court incorrectly applied state law. *Id.* at 71. Rather, a federal habeas claim will lie only where a state court determination violated some federally protected right. *Id.* at 68.

122 (2009). The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 688). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* (citing *Strickland*, 466 U.S. at 689). In this regard, "[t]he law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (counsel correctly did not pursue an insanity defense that "had almost no chance of success"). The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington* 562 U.S. at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694). It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (citing *Strickland*, 466 U.S. at 687).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult" and focuses on "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

The PCR court analyzed Petitioner's claims under the *Strickland* standard and rejected the claim that her attorney should have pursued an intoxication or diminished capacity defense, and found that the decision was a matter of trial strategy. Exhibit 30, p.25. As noted by Respondents, the trial record reflects that defense counsel specifically did not want the trial court to charge the jury on the defense of intoxication because it would have been inconsistent with the defense theory that petitioner's blood alcohol level did not rise to the level of intoxication and had no effect on the accident, given that the victim jumped on the hood of her car.[8] *See* Exhibit 24 p.102-103; Exhibit 25, p.6. The PCR court further found that Petitioner had not provided any evidence showing a reasonable probability that pursuing an intoxication defense would have been stronger than the asserted unavoidable accident defense. Exhibit 30, p.25-27.

With respect to Petitioner's IAC claims regarding Dr. Zhang and Detective Anderson's testimony, the PCR court first found these claims procedurally barred by Rule 3:22-4 and/or Rule 3:22-5, because the issues were either raised on direct appeal and disposed of by the Appellate Division, or could have been raised on direct appeal. *See* Exhibit 30, p.10.

In the alternative, the PCR court held that Petitioner could not establish that 1) she was prejudiced by Dr. Zhang's testimony in light of the curative instruction or that 2) she was prejudiced by the failure to request that the testimony be stricken. The Court also found that the request for a curative instruction (over striking the testimony) was a reasonable trial strategy. *See*

---

[8] In its opinion denying Petitioner's direct appeal, the Appellate Division noted this strategy, stating as follows: "The causation charge was not the only strategic refusal of a charge that defendant's trial attorney made. Defendant declined instruction on the intoxication defense because it did not comport with her theory of "unavoidable accident" and that the defendant was not, in fact, intoxicated." *White*, 2012 WL 2735591, at *12.

*id.*, p.15-17. With respect to trial counsel's decision to withdraw the objection to Detective Anderson's testimony and to elicit additional testimony, the PCR court determined that this strategy was intended to expose weaknesses in Detective Anderson's testimony and report, and did not rise to the level of deficient performance.[9]  *See id.*, p.17-19.

The Appellate Division "affirm[ed] substantially for the reasons stated by [the PCR court in its] comprehensive oral decision, as [the appellate court was] satisfied from [its] review of the record that defendant failed to make a prima facie showing of ineffectiveness of trial counsel within the *Strickland-Fritz* test."[10] *State v. White*, 2016 WL 4784101, at *3 (N.J. Super. App. Div. Sept. 14, 2016).

Having reviewed the trial testimony, including the challenged testimony by Dr. Zhang and Detective Anderson, the summations of counsel, and other relevant testimony, this Court finds that the state court did not unreasonably apply *Strickland* in finding that Petitioner failed to make a prima facie showing of ineffective assistance of counsel with respect to her claims in Ground Four of the Petition. As such, the Court will deny habeas relief as to Ground Four.

### e.  Certificate of Appealability

Having denied the claims in the Petition, the Court will also deny a COA.  Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right."  Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

---

[9] Indeed, in summation, trial counsel emphasizes that Detective Anderson's report was based on misinformation from other witnesses, including Kelly and Richardson.  Exhibit 25, p. 100-106.

[10] Based on this language, it appears that the Appellate Court affirmed on the merits and not on the basis of the procedural bars imposed by the PCR court.

## IV.    **<u>CONCLUSION</u>**

As explained in this Opinion, the Court denies the Petition and denies a COA.  An

appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge

DATED: March 2, 2021